**COMMONWEALTH of Kentucky, Appellant,**

v.

**John Alan SELF, Appellee.**

No. 89–CA–1041–MR.

Court of Appeals of Kentucky.

Aug. 3, 1990.

Rehearing Denied Oct. 19, 1990.

Discretionary Review Denied by Supreme Court March 6, 1991.

Frederic J. Cowan, Atty. Gen., Carol C. Ullerich, Asst. Atty. Gen., Frankfort, for appellant.

Rebecca E. Murrell, Louisville, for appellee.

Before HOWERTON, C.J., and HOWARD and McDONALD, JJ.

HOWARD, Judge.

The Commonwealth appeals from a judgment of the Bullitt Circuit Court dismissing the indictment of the appellee charging him with wanton endangerment in the first degree and unlawful transaction with a minor. The facts of this case come mostly from police and medical reports.

Vincent Jackson, Erica Leitzell, and Tracy Heady were riding in a vehicle driven by the appellee, John Alan Self, in the early morning of March 30, 1986, when they stopped at a party in Hardin County. Tracy and Erica were both fourteen years of age. The four brought out some whiskey and beer from the trunk of the vehicle. All four were drinking. Self appeared intoxicated and was smoking marijuana. The four left the party about 1:30 a.m. and Self was driving.

The group then went to Louisville to find a friend of one of the girls. The search was unsuccessful and they left Louisville. Somewhere near Shepherdsville, Jackson, who was riding in the back with Tracy and

who had been asleep, woke up and noticed Erica was driving. Self and Tracy were asleep. Jackson also noticed that the speedometer read 75 m.p.h. Jackson then went back to sleep. Self stated that Erica wanted to drive, he thought she had license, and so he slid over to the passenger side.

Near Lebanon Junction, Jackson awoke again as he was thrown out the rear window of the vehicle. The vehicle rolled and when it stopped, Self climbed out of the passenger window. Jackson and Self received only minor injuries. Erica was thrown from the vehicle and killed. Tracy's body was trapped underneath the vehicle and burned when the vehicle caught fire.

There were several persons at the accident scene when the police arrived. None of them had seen who was driving, but all reported that Self and Jackson had gotten liquor bottles from the vehicle and thrown them over the hill. A police officer retrieved at the scene a ⅓–full bottle of whiskey, a pipe, a black film container with an unknown substance inside, and a package of cigarette-rolling papers.

Autopsies were performed on the two girls and their deaths were attributed to injuries received in the accident. Erica's blood alcohol level was .10% and Tracy's was .03%. Self's blood alcohol level was .09%.

On March 6, 1987, Self was indicted on a count of first-degree wanton endangerment for allowing a minor to drive after having provided her with alcohol. Self was also indicted on one count of unlawful transaction with a minor.

On May 2, 1989, a trial was to be held and the jury was sworn. Self offered several pretrial motions, including a motion to dismiss. The trial court was of the opinion that a wanton endangerment charge is not appropriate when death results from the accused's conduct. Rather, when death occurs, the trial court reasoned, the proper charge should be some degree of criminal homicide. The trial court also stated if any alcohol was provided to the minor, that transaction occurred in Hardin County, not Bullitt County, and thus, venue was improper.

The Commonwealth contends that it has the discretion to bring whatever charges against a defendant it feels are justified by the evidence.

A person commits wanton endangerment in the first degree, as defined in KRS 508.-060(1), when "under circumstances manifesting extreme indifference to the value of human life, he wantonly engages in conduct which creates a substantial danger of death or serious physical injury to another person."

The trial court based its decision largely on the following commentary to KRS 508.-060:

The offenses created by KRS 508.060 and 508.070 can best be described by use of this hypothetical situation: D, with no intent to kill or injure but with an awareness of the risk involved, shoots a gun into an occupied building, thereby consciously disregarding the risk of death or injury to its occupants. If someone is killed as a consequence of this act, D has committed murder if the triers of fact determine that the circumstances under which he acted manifest extreme indifference to human life (KRS 507.020) or manslaughter in the second degree if the triers find someone is seriously injured as a consequence of this act, D has committed assault in the first degree if the circumstances under which he acted manifest an extreme indifference to human life (KRS 508.010) or assault in the second degree if they manifest no such indifference (KRS 508.020). If D's act causes neither of these consequences, he has committed the offense of wanton endangerment under KRS 508.060 or 508.-070.

In *Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604, 611 (1978), the Supreme Court stated that "[i]n

our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." There are limitations on this discretion if an offense is selectively prosecuted based on "arbitrary classifications" such as race or religion. *Id.* We cited these statements with approval in *Commonwealth v. McKinney*, Ky.App., 594 S.W.2d 884 (1979).

The definition of criminal homicide in KRS 507.010 refers to one being guilty of some degree of the offense, depending on the circumstances, when he "causes the death of another human being." When the Commonwealth attorney chose not to charge Self with a degree of criminal homicide, he evidently felt that he would have trouble proving that Self caused Erica's death.

However, the commonwealth attorney apparently believed he could prove all the elements of first-degree wanton endangerment. All elements of an offense charged against a defendant must be proven beyond a reasonable doubt. *In Re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). KRS 500.070. But we know of no authority which would require a prosecutor to charge a higher offense which he felt he could not prove.

We agree that this case is not the typical wanton endangerment case because the wanton conduct led to a death. But we do not think the commentary to KRS 508.060 imposes a restriction that when a death occurs, wanton endangerment cannot be charged. Rather, the commentary simply offers the more clear-cut situations where the charge might apply. Under the circumstances of the case at bar, the commonwealth attorney did not abuse his discretion in determining to bring a charge of wanton endangerment.

■ The Commonwealth also contends that the trial court erred in dismissing the charge of unlawful transaction with a minor because of improper venue.

It appears that the alcohol was provided to the minors in Hardin County. The four went to Louisville and on the return trip were in Bullitt County at the time of the accident. KRS 452.550 provides in pertinent part that "if acts and their effects constituting an offense occur in different counties, the prosecution may be in either county in which any of such acts occur." Therefore, the indictment was properly brought in Bullitt County.

■ Self argues that even if the Commonwealth's appeal is successful on the merits, it cannot retry him on the grounds of double jeopardy. Self maintains that the trial court's dismissal amounted to a directed verdict on the grounds of insufficiency of the evidence. But our reading of the record shows that the trial court only dismissed the case because in its view the wrong offense was charged. The trial court said nothing about sufficiency of the evidence.

The Supreme Court in *Richardson v. United States*, 468 U.S. 317, 325, 104 S.Ct. 3081, 3086, 82 L.Ed.2d 242, 250 (1984), stated "the protection of the Double Jeopardy Clause by its terms applies only if there has been some event, such as an acquittal, which terminates the original jeopardy." In *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), a finding by an appellate court that the evidence for a conviction was insufficient prevents retrial of the offense charged. The Court in *Richardson, supra,* stated that an appellate finding of insufficiency of the evidence such as in *Burks, supra,* was the equivalent of an acquittal.

A case somewhat analogous to the one at bar is *Illinois v. Somerville*, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973). In that case, a jury was impaneled, but before any evidence was presented, the prosecutor realized that the indictment was fatally defective. The defect could not be cured by amendment or waived and could be

brought up at any time. The trial court, over the defendant's objection, granted the prosecution's motion for a mistrial. The Supreme Court held that retrial was not barred on double jeopardy grounds.

We believe that the trial court's dismissal of the indictment was not the equivalent of an acquittal. Therefore, a retrial would not be prohibited by the double jeopardy clause.

The judgment is reversed.

All concur.